O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WARREN BEATTY, | ) | Case No. CV 08-07662 DDP (SSx) |
| Plaintiff, | ) ) | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | ) ) | |
| TRIBUNE MEDIA SERVICES, INC. et al., | ) ) ) | [Motions filed on February 14, 2011] |
| Defendants. | ) | |

Presently before the court is Plaintiff Warren Beatty's Motion for Summary Judgment and Defendant Tribune Media Service, Inc.'s cross Motion for Summary Judgment. After reviewing the materials submitted by the parties, considering the arguments therein, and hearing oral arguments, the court GRANTS Plaintiff's motion and DENIES Defendant's motion.

**I.  Background**

In August 1985, Plaintiff Warren Beatty and Defendant Tribune Media Services, Inc. entered into a written agreement ("Agreement") whereby Plaintiff obtained motion picture, television, and other rights to the Dick Tracy character. (Compl. ¶ 7.) Paragraph 9 of the Agreement provided a procedure whereby under certain

circumstances the rights to Dick Tracy would revert to Defendant. (Id. ¶ 8.)  Specifically, Paragraph 9 provided that if a "theatrical motion picture or television series or special" had not commenced within five years of the initial picture or those subsequent, Defendant "may give [Plaintiff] notice of intention to effect a reversion of all rights granted."  (Compendium, Ex. A, 1985 Agreement, ¶ 9.)  Furthermore, "[i]f within two years after receipt of said notice, such principal photography has not commenced, then [Defendant], by a further written notice to [Plaintiff] may effect such reversion."  (Id.)

In 1990, Plaintiff starred in Disney's Dick Tracy. (Beatty Decl. ¶ 6.) Thereafter, Plaintiff entered into a separate agreement with Disney whereby Disney produced a television episode in which Nancy Kerrigan skated with popular Disney characters, including Dick Tracy. (Williams Decl., Ex. B, Rone Letter.)  In 1995, Defendant agreed that Nancy Kerrigan's ice skating special would be considered a "television special" for purposes of satisfying the Agreement. (Id.)

In 2005, Defendant took the position that the Dick Tracy rights should revert to it, and Plaintiff filed suit seeking a judicial determination that there had been no reversion of the Dick Tracy rights because the requisite notices had not been provided. (Compl. ¶¶ 9-11.)  In November 2006, this court dismissed Defendant's claim as moot.  (Id. ¶ 11.)

Shortly thereafter, Defendant gave Plaintiff written notice that Plaintiff had two years within which to commence principal photography of a Dick Tracy "theatrical motion picture or

1  television series or special" per the terms of the Agreement.
2  (Id.)  Specifically, Defendant advised Plaintiff that:

> This letter shall serve as notice that [Defendant] intends to effect a reversion of all rights granted to [Plaintiff] pursuant to the Dick Tracy Agreement . . . .  Unless, as required by Paragraph 9 of the Dick Tracy Agreement, you commence principal photography on "another theatrical motion picture or television series or special" within two years after receipt of this notice, [Defendant] will provide you with another written notice, at which time all rights in the Dick Tracy Property will be reverted to [Defendant].

(Id.)

On April 16, 2008, Plaintiff sent a letter to Defendant requesting the deadline be extended.  (Williams Decl., Ex. D, Beatty Letter.)  The letter stated that while Plaintiff would prefer to make a sequel to the Dick Tracy movie after the current deadline, Plaintiff was "prepared to do a TV special in order to preserve [his] rights" even though he did not "see how a TV special would benefit either [Defendant] or [himself]."  (Id.)  Defendant declined.  (Williams Decl., Ex. E, Williams Letter.)

On November 8, 2008, in advance of the two-year deadline, Plaintiff gave written notice to Defendant that he had commenced principal photography of a Dick Tracy television segment (hereafter "the Segment").  (Compl. ¶ 13.)  The Segment was to be aired on Turner Classics Movies (a cable television network) preceding the 1990 Dick Tracy movie.  (Compendium, Ex. D, TCM Agreement, ¶ 3.)  In the Segment, Plaintiff dressed up as Dick Tracy and answered questions posed to him by a film critic.  (Beatty Decl. ¶ 11.)  The Segment was to be aired in July 2009 as part of a Dick Tracy marathon, but was never broadcast.  (Wright Decl., Ex. 4, ¶¶ 4-5.)

3

On November 20, 2008, Plaintiff filed a complaint seeking declaratory relief.  (Dkt. No. 1.)

**II.  Legal Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law."  Id. at 248.  No genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not enough for a party opposing summary judgment to "rest on mere allegations or denials of his pleadings."  Anderson, 477 U.S. at 259.  Instead, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 325.  The "mere existence of a scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment.  Anderson, 477 U.S. at 252.

Federal Rule of Evidence 201 permits a court to take judicial notice of adjudicative facts. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

**III. Discussion**

This dispute is, at its core, a contract dispute. The parties disagreement centers on their differing understandings of the term "television special." As noted above, under Paragraph 9 of the Agreement, if principal "photography has not been commenced" on a "theatrical motion picture or television series or special" within two years of Defendant having provided notice, Plaintiff's rights to Dick Tracy revert back to Defendant. Here, Plaintiff contends that his commencement of principal photography of the Dick Tracy television segment, i.e. the Segment, in which he was interviewed is sufficient to preserve his rights under the Agreement and precludes Defendant from seeking a reversion. (Compl. ¶ 15.)

Defendant argues that Plaintiff's "thirty minute clip show" for cable television of Plaintiff "wearing a yellow 'Dick Tracy' coat and hat while commenting on various archival clips of existing Dick Tracy works" does not satisfy Plaintiff's obligation. (Def.'s Motion 1:24-28, 7:3-4.) Therefore, by Defendant's reasoning, Plaintiff's Dick Tracy rights under the agreement must revert back to Defendant and Plaintiff is not entitled to declaratory relief.

Under California law, the court's role in determining the "intention of the parties as expressed in the contract" is to

5

determine "what the parties meant by the words they used." <u>Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.</u>, 69 Cal. 2d 33, 38 (1968). That is, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting . . . ." <u>Id.</u>, 38 n.5 (citing Cal. Civ. Code § 1636). With regards to written contracts, "the intention of the parties is to be ascertained from the writing alone, if possible." Cal. Civ. Code § 1639.

Here, the parties dispute the meaning of "television special." Defendant argues that "television special" is a technical term used in the television industry, and therefore a technical definition should apply. Defendant seeks judicial notice of an Entertainment Law treatise, which defines a "television special." Based on this definition, Defendant contends that the Segment did not qualify because the Segment: (1) was never intended to be telecast on a free commercial network; (2) it contained a narrative and had a running time of less than two hours; and (3) it was not a stand-alone program, but rather, was run in conjunction with the Disney Dick Tracy movie. (Def.'s Motion 8:16-9:3.) Defendant further argued that even accepting the definition of "television special" offered by Plaintiff, the Segment is not a "television special" because it was to be broadcast together with the Dick Tracy movie.

Plaintiff counters that the term "television special" is not defined anywhere in the Agreement and should be given its ordinary and popular meaning. (Pl.'s Opp'n to Def.'s Motion 12:14-23.) Plaintiff cites Webster's Collegiate Dictionary, stating that a "special" is "something (as a television program) that is not part of a regular series." (<u>Id.</u>) Plaintiff argues that it is proper to

6

use dictionary definitions to determine the ordinary meaning of words in a contract. (Id. 13:2-5 citing Falkowski v. Imation Corp., 132 Cal. App. 4th 499, 508 (2005).) Plaintiff further points out that there is no mention in the Agreement of any of the requirements and limitations that Defendant now imputes to the term "television special." The court agrees.

The fundamental goal of contract interpretation is to give effect to the parties' mutual intentions, which, if possible, should be inferred solely from the written terms of the contract. If that language is clear and explicit, it governs. See Forecast Homes, Inc. v. Steadfast Ins. Co., 181 Cal. App. 4th 1466, 1467 (2010). Here, the contract requires only that Plaintiff "commence[]" " principal photography" on a "theatrical motion picture or television series or special." (1985 Agreement, ¶ 9.) It is undisputed that Plaintiff commenced principal photography in a timely fashion. Furthermore, the court finds that both the ordinary meaning of "television special" as stated in Webster's Dictionary and as established by the parties in their course of dealing support a conclusion that Plaintiff's thirty minute television segment was a "television special" for purposes of the Agreement.

First, the court notes that the plain terms of the Agreement include none of the limitations suggested by Defendants. Nowhere does the Agreement require that the special be broadcast on a "network," nor that it be over an hour long if narrative, nor that it stand alone, nor that it not be aired in conjunction with another program. The Agreement also does not at any point

condition retention of the Dick Tracy rights on a "television special" that is commercially profitable.

Next, the court finds it significant that in 1995 Defendant agreed that the Nancy Kerrigan ice skating special constituted a "television special" for purposes of the Agreement. (Compendium, Ex. B, January 25, 1995 Letter.)  It is undisputed that the Kerrigan special was also thirty minutes long, and that the Dick Tracy character in that television segment only appeared briefly. With respect to the substance of the special, the disputed special makes far greater substantive use of the Dick Tracy rights and legally shares significant similarities.  The two segments were the same length; they both were not part of a television series but stood alone as television episodes; they were both shot for television; and they both involved the use of the Dick Tracy character.  Defendant may be frustrated that Plaintiff has not used his rights to Dick Tracy for more profitable ends.  The court, however, cannot "create for the parties a contract they did not make," and the court "cannot insert language that one party now wishes were there." Forecast Homes, Inc., 181 Cal. App. 4th at 1476.

Finally, Defendant avers that Plaintiff's Dick Tracy segment was created in bad faith as it was not intended to create value from the Dick Tracy property.  The Agreement, as written, does not require Plaintiff to meet particular financial benchmarks. Defendant avers that the only reason Plaintiff produced the segment was to retain his rights.  That may very well be true; no more was required.  See Third Story Music, Inc. v. Waits, 41 Cal. App. 4th 798, 809 (1995) (explaining that "courts cannot . . . rewrite

8

```
 1  contracts because they operate harshly or inequitably.") It is not
 2  an act of bad faith for a party to act in conformity with rights
 3  which have been provided to him under the terms of the Agreement.
 4  See Wolf v. Walt Disney Pictures and Television, 162 Cal. App. 4th
 5  1107, 1120 (2008).  Furthermore, there is substantial and
 6  undisputed evidence which suggests that Plaintiff attempted to
 7  maximize the profitability of the Segment by showing it in
 8  conjunction with a showing fo the Dick Tracy film.
 9       Accordingly, Plaintiff is entitled to summary judgment.
```

**IV. Conclusion**

For the reasons set forth above, the court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

Dated: March 24, 2011

DEAN D. PREGERSON
United States District Judge